J-S37026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                         :         PENNSYLVANIA
                                         :
                v.                       :
                                         :
                                         :
SULAYMAN M. WOMACK         :
                                         :
              Appellant            :     No. 3075 EDA 2023

Appeal from the Judgment of Sentence Entered November 3, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0003361-2021

BEFORE:    DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:           **FILED JANUARY 15, 2026**

Sulayman Womack appeals from the judgment of sentence imposed after a jury convicted him of first-degree murder, conspiracy, and carrying a firearm without a license.[1] Additionally, counsel asked to withdraw from representation and filed a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967). Upon review, we grant counsel's petition and affirm the judgment of sentence.

This appeal arises from the fatal shooting of a 13-year-old boy, Ny'Ques Farlow-Davis, the afternoon of May 3, 2020, because of the sweatshirt he was wearing. The trial court set forth the evidence presented at trial, in part, as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502 (a), 903, and 6106(a).

Rowland Byrd testified that he had been with the victim for several hours on the day of the shooting and that he and [the victim], who was his cousin, were walking to St. Katherine Drexel Church to play basketball. While enroute to the basketball court, Mr. Byrd noticed an SUV pass them with four (4) occupants, who were staring at them. A few minutes later this same vehicle returned to the same street where they were [still] walking and stopped facing the opposite direction from the way they were proceeding. The occupant from the front passenger side of the car, the side nearest them, then got out of the vehicle and directly approached Mr. Byrd and the victim.

Mr. Byrd testified he turned his head and saw that the individual who had just exited the SUV was approximately two (2) feet behind him and [the victim] and was directing them to "come here." At this point, Mr. Byrd and the victim began to run. A chase ensued as [Mr. Byrd and the victim] ran between two (2) houses followed directly by the person who had mere seconds earlier exited the vehicle's passenger side. Mr. Byrd looked back and saw that this same individual pursuing them was wearing a mask and carrying a black gun. Mr. Byrd encountered a fence with a gate that he was unable to climb over, so he changed course and ran to St. Katherine Drexel Church. [Mr.] Byrd was able to see his young cousin, the victim, "hopping" the gate, which was the last thing he observed before fleeing to the church. Mr. Byrd once inside the church heard gunshots, and he estimated the shots in number to be seven (7) or eight (8).

\*\*\*

[Danielle Showell testified that on May 3, 2020,] she had been with [] Womack and two (2) other individuals, co-Defendants Keyonte Watkins and Tavon Starkey, since approximately noon. They were originally in the housing development known as the William Penn within the City of Chester, Pennsylvania . . . .

[Womack], herself, co-Defendants Keyonte Watkins and Tavon Starkey got into an Acura SUV . . . with co-Defendant Starkey being the vehicle's operator. While driving in the City of Chester, they came upon "two boys" walking along 20th Street, one of whom was wearing a green and black "BFE hoodie." She further offered that "BFE" stood for "Blue Face Entertainment." [] Showell noted that such clothing having the "NO" logo was recognized as being associated with people from "Sun Village." Sun Village is a

different neighborhood in the City of Chester, one [] which those from William Penn have had ["a beef" with for years].

Upon seeing the hoodie with the "BFE" logo, [] Showell directed out loud, "spin the block," meaning the SUV was to circle the block. She related that [Womack] also contemporaneously verbalized that he was going to make the "boy" with [the] hoodie take it off, and also steal his phone. With co-Defendant [] Starkey still driving, the co-Defendants did in fact "spin the block" and come around to 20th Street again. Co-Defendant Starkey stopped the car, and [] Womack immediately got out and as he quickly approached them demanded the young men to "come here." The two (2) in response to [Womack's] menacing directive ran with [] Womack pursuing them. [] Showell, co-Defendant Watkins and Starkey then quickly got out of the car and also gave chase. [] Showell testified that one "boy" " ... ran up 20th Street and one ran to the right through the driveway."

She said that [Womack] chased the "little boy" down a driveway/alleyway, which had houses on both sides. [] Showell recounted how co-Defendant Starkey followed [] Womack into the same driveway and that co-Defendant Watkins stayed in the street. [Given their immediate proximity, Showell] stated that she could see [Womack] the entire time.

[] Showell testified that [] Womack then began shooting a black gun, [an "XD-45,"] although she could not see the "little boy" at that point as she believed he had "hopped the fence." She estimated that [Womack] at that time fired "seven or eight" shots. [] Showell further offered that neither she, co-Defendant Starkey, nor co-Defendant Watkins then had a firearm.

\*\*\*

After [] Womack stopped shooting, [they] returned to the SUV and drove back to the William Penn housing development, according to [] Showell. [] Showell stated that when they got back into the car, [] Womack verbally observed the "young boy" was going to "check," meaning die. She stated that [Womack] also then commented, "fuck that young bull."

\*\*\*

Upon returning to the William Penn, the co-Defendants encountered other persons who they knew, and were informed that the vehicle in which they were riding "came across the

- 3 -

scanner." Under direct examination, [] Showell elaborated as follows: "Q. Okay. When you say the car came across, what do you mean, the car came across? A. Like somebody called the car in, and said that it was involved in the shooting."

\*\*\*

[C]o-Defendant Starkey drove away [in the SUV] . . . . [] Showell testified under cross-examination that [] she had learned subsequently via social media, as well as through co-Defendant Starkey, the vehicle used during the murder had been set on fire. [The owner of the vehicle, an acquaintance of co-defendant Starkey, reported the car stolen. Police located the vehicle and found it on fire.]

Trial Court Opinion, 1/22/25, at 22-28 (citations omitted).

Showell further testified that she, Womack, and Watkins went to a nearby park in the housing development. There, they encountered "Mr. Jackson." Womack, who was still wearing the same clothes, and the mask, told Mr. Jackson what had happened on East 20th Street and reenacted the shooting for him. This, and much of Showell's testimony, was corroborated by video surveillance and other evidence

A resident from the area heard gunshots nearby. She looked out her window and saw 3 people running and getting in a vehicle. She "rehearsed the license plate" of a silver SUV and called 911.

Police responded to a report of a gunshot victim. The police found Farlow-Davis with gunshot wounds behind the residence at 427 East 20th Street. They also found nine shell casings near the victim and all were fired from the same gun, a .45 caliber weapon.

- 4 -

Farlow-Davis was taken to the hospital for emergency medical care but died the next day. The medical examiner performed an autopsy and found five bullet wounds scattered throughout Farlow-Davis' body. The medical examiner determined that his death was caused by multiple gunshot wounds; the gunshot wound to his head, which fractured his skull and traumatized his brain, was devastating.

The Pennsylvania State Police reported that, on the day of the shooting, Womack did not have a license to carry a firearm.

Womack, Showell, Starkey, and Watkins were arrested and charged.[2]

Womack proceeded to trial. Thereafter, a jury convicted Womack of first-degree murder, conspiracy, and firearms not to be carried without a license. On November 3, 2023, the trial court sentenced Womack to life in prison without the possibility of parole. Womack did not file a post-sentence motion.

Womack filed this timely appeal.[3] He and the trial court complied with Appellate Rule 1925.[4] Counsel filed an **Anders** brief with this Court and a

_____

[2] Ultimately, co-Defendants Showell, Starkey, and Watkins pled guilty to less serious crimes related to their involvement with this incident.

[3] Subsequently, on December 14, 2023, the trial court amended its order to reflect the grading of the conspiracy count.

[4] Initially, prior appellate counsel filed a Rule 1925(c)(4) statement. Current appellate counsel filed an amended concise statement pursuant to Rule 1925(b). Counsel noted that she was unaware that the weight claim had not been raised with the trial court and did not intend to forgo filing an **Anders** brief in doing so.

petition to withdraw. Womack did not retain independent counsel or file a *pro se* response to the *Anders* brief.

When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw. *See Commonwealth v. Garang*, 9 A.3d 237, 240 (Pa. Super. 2010). Pursuant to *Anders*, when counsel believes an appeal is frivolous and wishes to withdraw from representation, counsel must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous; (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and (3) furnish a copy of the brief to the defendant and advise [him] of [his] right to retain new counsel, proceed *pro se*, or raise any additional points [the defendant] deems worthy of this Court's attention.

*Commonwealth v. Edwards*, 906 A.2d 1225, 1227 (Pa. Super. 2006) (citation omitted).

In *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of *Anders*, *i.e.*, the contents of an *Anders* brief, and required that the brief:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

- 6 -

*Santiago*, 978 A.2d at 361.

Once counsel has satisfied the *Anders* requirements, it is then this Court's responsibility "to conduct a simple review of the record to ascertain if there appear on its face to be arguably meritorious issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*).

Here, counsel filed both an *Anders* brief and a petition for leave to withdraw. Further, the *Anders* brief substantially comports with the requirements set forth by our Supreme Court in *Santiago*. Additionally, the record included a copy of the letter that counsel sent to Womack, indicating counsel's intention to seek permission to withdraw and advising Womack of his right to proceed *pro se* or retain new counsel and file additional claims. Accordingly, as counsel has complied with the procedural requirements for withdrawing from representation, we will conduct an independent review to determine whether Womack's appeal is wholly frivolous.

In the *Anders* brief, counsel indicates that Womack wishes to raise the following two issues:

> 1. Whether the evidence was sufficient to convict [Womack] of the crimes of first[-]degree murder, conspiracy to commit first[-]degree murder and firearms not to be carried without a license[.]
>
> 2. Whether the verdict was against the weight of the evidence[.]

*Anders* Brief at 3 (excessive capitalization omitted).

In his first issue, Womack purports to challenge the sufficiency of the evidence to convict him of murder, conspiracy, and firearms offense.

- 7 -

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

In applying the above test, we may not reweigh the evidence and substitute our judgment for the fact-finder.

*Commonwealth v. Holmes*, 327 A.3d 307, 311-12 (Pa. Super. 2024) (brackets and citation omitted).

Specifically, Womack argued:

1. Whether the evidence was insufficient to convict Womack on the charge of murder in the first degree or conspiracy to murder in the first degree in that the evidence presented by the Commonwealth did not prove beyond a reasonable doubt that [Womack] killed or conspired to kill the victim, [Ny'Ques] Farlow-Davis. The testimony of the Commonwealth's main witness, [] Showell, lacked credibility in that she admitted to lying to law enforcement and to the Commonwealth several times to "minimize her role" until she received an agreement to plead guilty to murder in the third degree and conspiracy which carries a substantially lesser sentence than her original charges. Consequently, this witness had clear motive to fabricate her testimony against [Womack]. No other Commonwealth witness testified to seeing [Womack] actually shoot the victim, there was no video footage of the shooting, the scene was not processed for fingerprints or DNA evidence linking [Womack] to the shooting, there was no testing of clothing for gunpowder residue[,] and witnesses told Det. Pot[] that they would not be able to identify [Womack].

2. Whether the evidence was insufficient to convict [Womack] on the charge of firearms not to be carried without a license. The Commonwealth failed to prove beyond a reasonable doubt that

> [Womack] had a firearm in his possession. The only Commonwealth witness that testified that [Womack] possessed the firearm was [] Showell. Her testimony lacked credibility in that she admitted to lying to law enforcement and to the Commonwealth several times to "minimize her role" until she received an agreement to plead guilty to a substantially lesser charge of murder in the third degree and conspiracy. Consequently, this witness had clear motive to fabricate her testimony against [Womack]. The other Commonwealth witness, Rowland Byrd, only saw a person with a gun for a split second before he ran. Commonwealth witnesses, [Mr.] Byrd and Ms. Geathers were unable to identify [Womack] during investigation or at trial. In addition, [] no other witnesses testified as to seeing [Womack] possess a gun and the video evidence did not show [Womack] as possessing or concealing a gun upon his person.

Womack's Concise Statement (excessive capitalization omitted). We agree with counsel that Womack's "sufficiency claim" is frivolous.

To assert and preserve a claim that the evidence was insufficient to sustain a conviction, the defendant must specify in his Rule 1925(b) statement, which element(s) of the crime the evidence was insufficient to prove. This enables the Court to analyze the element(s) on appeal. Where a Rule 1925(b) statement does not specify the allegedly unproven elements, the sufficiency issue is waived on appeal. **Commonwealth v. Arnold**, 284 A.3d 1262, 1279 (Pa. Super. 2022) (brackets, ellipses, and citation omitted). "Such specificity is of particular importance in cases where [an appellant] was convicted of multiple crimes, each of which contains elements that the Commonwealth must prove beyond a reasonable doubt." **Commonwealth v. Cox**, 231 A.3d 1011, 1016 (Pa. Super. 2020).

A "challenge to the weight of the evidence [differs] from a challenge to the sufficiency of the evidence in that the former concedes the Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed." *Commonwealth v. Kinney*, 157 A.3d 968, 971 (Pa. Super. 2017) (citation omitted). Notably, a sufficiency of the evidence review does not include an assessment of the credibility of testimony offered by the Commonwealth. *Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. Super. 1999). "[A]n appellant's challenge to the sufficiency of the evidence must fail where an appellant phrases an issue as a challenge to the sufficiency of the evidence, but the argument that the appellant provides goes to the weight of the evidence." *Commonwealth v. Juray*, 275 A.3d 1037, 1043 (Pa. Super. 2022) (internal quotation marks, brackets, and citations omitted).

Here, as counsel and the trial court observe, Womack conflates his sufficiency claim with that of a weight claim. First, in his Rule 1925(b) statement, Womack does not identify the specific element(s) for each offense that the Commonwealth's evidence was insufficient to prove.[5] Instead, he attacks the reliability and credibility of the evidence, particularly Showell's testimony. This constitutes a weight claim, not a sufficiency claim.

___

[5] On this basis, we could find that Womack waived his sufficiency claim, and therefore, is frivolous. *See Commonwealth v. Tukhi*, 19 A.3d 881, 888-89 (Pa. Super. 2016).

Accordingly, Womack's sufficiency challenge fails, and therefore, is frivolous. *See Juray*, *supra*.

In his second issue, Womack specifically claims that the verdict was against the weight of the evidence. He relies on the same arguments he made for his sufficiency claim. But, as counsel observes, and our review confirms, Womack failed to preserve this claim for appellate review. Thus, it is waived.

A weight of evidence claim must be preserved orally prior to sentence, in a written motion before sentencing, or in a timely post-sentence motion. *See* Pa.R.Crim.P. 607(A); *see also Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa. Super. 2012). "An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim." *Juray*, 275 A.3d at 1047 (citation omitted).

Here, Womack did not raise his weight claim either orally or in writing before sentencing and did not file a post-sentence motion. Accordingly, this issue is waived. Because it is waived, it is frivolous under *Anders*. *See Tukhi*, 19 A.3d at 888-89 (citing *Commonwealth v. Kalichak*, 943 A.2d 285, 291 (Pa. Super. 2008)) (holding that when an issue has been waived, "pursuing th[e] matter on direct appeal is frivolous").

For the foregoing reasons, we conclude that Womack's claims on appeal are frivolous. Further, in accordance with *Dempster*, we have independently reviewed the certified record to determine if there are any non-frivolous issues that counsel may have overlooked. Having found none, we agree that the

appeal is wholly frivolous. Therefore, we grant counsel's petition to withdraw and affirm the judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/15/2026